**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

UNITED STATES OF AMERICA

v. Case No. 3:26CR31 (SRU)

MICHAEL SIMES September 7, 2026

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States submits this memorandum in aid of the sentencing of Michael Simes. The defendant's sentencing is presently scheduled for September 14, 2026 at 1:30 pm. The defendant, an attorney, pled guilty on Mach 9, 2026, to a three-count Information charging violations of 26 U.S.C. § 7203, relating to the willful failure to file U.S. Individual Income Tax Returns (Form 1040) for tax years 2020 (Count One), 2021 (Count Two), and 2022 (Count Three), despite receiving substantial partner income distributions from his law firm during those years. The defendant also willfully failed to file tax returns for many other years, including 2013, 2016, 2017, 2018, and 2019, again despite having significant partner income distributions. The defendant additionally filed tax returns for tax years 2012, 2014, and 2015, but then failed to pay all monies due for those years, resulting in additional tax loss, penalties, and interest. *See* Guidelines Loss Chart attached to the plea agreement. In total, the defendant failed to file returns involving $5,627,066 in gross income. The total resulting Guidelines Tax Loss stipulated by the parties is $3,171,266. The defendant has agreed to make restitution in the amount of $2,871,676, reflecting the outstanding tax obligation after removing the close to $300,000 2014 tax year obligation, which has been written off by the IRS. The parties and the Probation Office agree that the defendant is subject to an advisory Guidelines range of 24-30 months incarceration.

The defendant's agreed base offense level under U.S.S.G. § 2T1.1 and 2T4.1 is 22, as the Guidelines tax loss attributable to the defendant falls between $1,500,000 and $3,500,000. Three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, resulting in a total offense level of 19. The defendant falls within Criminal History Category I. Similarly, the defendant qualifies for a two-level reduction for "certain zero-point offenders" under U.S.S.G. § 4C1.1, which further reduces the defendant's total offense level to 17. A total offense level of 17, at a Criminal History Category I, results in a Guidelines range of 24 to 30 months of imprisonment (sentencing table) and a fine range of $10,000 to $95,000 (U.S.S.G. § 5E1.2(c)(3)). The defendant also is subject to a supervised release term of up to one year. U.S.S.G. § 5D1.2.

The defendant argues for a sentence of probation, far below the Guidelines recommended sentencing range of 24 to 30 months incarceration and ultimately inconsistent with important general deterrence objectives in tax cases to impose some meaningful period of incarceration. The defendant argues for the lower sentence on various grounds. Those include that (1) the defendant took steps to fix his tax non-compliance before the criminal investigation commenced, and the defendant has already paid $913,188 toward his restitution obligation of $2,871,676, Def. Mem. 1-2; (2) the defendant deserves credit for billing certain clients at below market rates and undertaking certain *pro bono* services, Def. Mem. at 9-12; (3) the defendant's family circumstances relating to the care of his children, including two with special needs, and the impact incarceration would impose on providing financial support for his family warrant consideration, Def. Mem. at 12-16; (4) the defendant has already been punished by loss of employment and potential disciplinary proceedings, Def. Mem. 17; (5) there is no need for specific deterrence given all the facts here, Def. Mem. at 17; (6) the objectives of general deterrence have already been met, Def. Mem. 17; (7) the analysis of sentencing statistics

warrants a lower sentence, including that the charges involve misdemeanors, citing the need for a lower sentence to avoid unwarranted sentencing disparity, Def. Mem at 18-21; and (8) and the stacking of misdemeanor charges is unnecessarily punitive. Def. Mem. at 22.

Ultimately the defendant requests a non-incarcerative sentence of two years probation with restitution and community service. Def. Mem. at 2. If confinement is required, the defendant requests home confinement as a term of probation. *Id.* The defendant also argues no fine should be imposed, given the defendant's financial circumstances and restitution obligation. Def. Mem. at 22. The defendant finally suggests certain modifications or limitations on proposed conditions of supervised release, including removing the restriction on association with those with convictions, given his legal practice areas, Def. Mem. at 23; removing the prohibition of contact with confidential informants as not applicable here, *id.*; removing the mandated firearm restrictions, Def. Mem. at 24; modifying travel restrictions to Connecticut, given that much of his practice is in New York, Def. Mem. at 24; modifying proposed limits on asset transfers, Def. Mem. at 24; modifying the restitution payment schedule and definition of monthly income, a concern that the defense concedes has be resolved by clarification of the definition by the Probation Office, Def. Mem. at 25; and clarifying that mental health treatment would include his current providers, Def. at 25.

The Government submits that, given the length of the illegal conduct that took place over a decade, the size of the tax loss, including hundreds of thousands of dollars that the IRS has written off, and the fact that this defendant as a practicing bankruptcy attorney well knew the responsibilities for compliance and the potential criminal consequences of failing to report and pay taxes, a sentence of 24-30 months is appropriate and reasonable here. At the very minimum, the Government submits some meaningful period of incarceration is important, given the need for general deterrence when it comes to tax noncompliance.

## I. Background of the Offense of Conviction and Relevant Conduct and Determination of Guidelines Losses

At all relevant times, the defendant Michael Simes was an attorney with practice areas in bankruptcy and commercial litigation and, as of 2018, a resident of Newtown, Connecticut. During each of the tax years 2013 and 2016 through 2022, the defendant received substantial income distributions as a partner of a law firm, yet failed to file his U.S. Individual Income Tax Return (Form 1040) for those years. For tax years 2016 through 2020, the defendant caused the filing of standard requests for extension of the time to file the requisite Form 1040 until October, but did not follow up by filing the requisite tax return when due after extension, despite having substantial tax obligations.

By way of example, during the calendar year 2020, the defendant, a resident of Connecticut, received gross income in excess of the minimum filing requirement. By reason of such gross income, the defendant was required by law, following the close of calendar year 2020 and on or before October 15, 2021, after extension, to make an income tax return to the Internal Revenue Service, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Knowing and believing all of the foregoing, the defendant willfully failed, on or about October 15, 2021, in the District of Connecticut, to make an income tax return.

By further way of example, during the calendar year 2021, the defendant, a resident of Connecticut, received gross income in excess of the minimum filing requirement. By reason of such gross income, the defendant was required by law, following the close of calendar year 2021 and on or before April 15, 2022, to make an income tax return to the Internal Revenue Service, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Knowing and believing all of the foregoing, the defendant willfully failed, on or about April 15, 2022, in the District of Connecticut, to make an income tax return.

By further way of example, during the calendar year 2022, the defendant, a resident of Connecticut, received gross income in excess of the minimum filing requirement. By reason of such gross income, the defendant was required by law, following the close of calendar year 2022 and on or before April 15, 2023, to make an income tax return to the Internal Revenue Service, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Knowing and believing all of the foregoing, the defendant willfully failed, on or about April 15, 2023, in the District of Connecticut, to make an income tax return.

The defendant also filed tax returns for tax years 2012, 2014, and 2015, for which he did not pay all monies due, thereby incurring additional tax loss, penalties, and interest. The parties agree that the Total Guidelines Tax Loss, including the tax loss associated with both the years for which returns were not filed and the years for which returns were filed but not paid, is $3,171,266, as set forth in the following chart.[1]

---

[1] It should be noted that in determining applicable Guidelines Tax Loss, the failure to file tax loss for years 2013 and 2016-2022 does not include interest and penalties, while the component of the Guidelines Tax Loss for failure to pay taxes on filed returns for tax years 2012, 2014 and 2015 does include interest and penalties. *See* 2T1.1 Commentary, Application Notes 1 (noting the difference in Guidelines Tax Loss dependent on the specific criminal conduct at issue).

Guidelines Tax Loss Chart

| Tax Year | Gross Income | Tax Loss Per Investigation | Payments | Interest (as of 5/31/25) | Penalties | Subtotal |
|---|---|---|---|---|---|---|
| 2013 | $632,910 | $248,655 | $0 | | | $248,655 |
| 2016 | $678,220 | $251,360 | -$70,000 | | | $181,360 |
| 2017 | $594,594 | $209,036 | $0 | | | $209,036 |
| 2018 | $929,060 | $324,068 | $0 | | | $324,068 |
| 2019 | $600,472 | $191,781 | $0 | | | $191,781 |
| 2020 | $972,195 | $339,329 | $0 | | | $339,329 |
| 2021 | $561,706 | $174,295 | $0 | | | $174,295 |
| 2022 | $657,909 | $207,783 | $0 | | | $207,783 |
| **Subtotal** | **$5,627,066** | **$1,946,307** | **-$70,000** | | | **$1,876,307** |
| 2012 (filed) | | $218,331 | -$50,150 | $177,495 | $81,621 | $427,297 |
| 2014 (filed) | | $225,257 | -$85,058 | $117,783 | $41,608 | $299,590 |
| 2015 (filed) | | $307,591 | -$23,163 | $206,982 | $76,502 | $568,072[2] |
| **Subtotal** | | **$751,179** | **-$158,371** | **$502,260** | **$199,731** | **$1,294,959** |
| **Total Guidelines Tax Loss** | **$5,627,066** | | | | | **$3,171,266** |

## II. The Court Is Fully Able to Balance the Section 3553 Factors.

In formulating the appropriate sentence, the Court will evaluate the various factors set forth in Title 18 U.S.C. § 3553(a), which favor a significant term of incarceration. Roughly those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense and just punishment and to promote respect of the law; to afford general and specific deterrence; and to provide the defendant training and care; (3) consideration of various types of sentences; (4) consideration of the sentence suggested by the Sentencing Guidelines; (5) consideration of pertinent Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need for restitution. *Id.* The Government will

[2] This figure includes an additional attributed $160 penalty/fee associated with the 2015 filed return.

address the various arguments raised by the defense, *supra* at 2-3, in the context of the relevant factor discussed below. In weighing the various factors, while a sentence within the advisory Guidelines range of 24-30 months is reasonable, the Government submits that sentence at least involving some period of incarceration is necessary to send the appropriate deterrent message, given the conduct at issue.

(1) <u>Nature and circumstances of the offense and history and characteristics of the defendant</u>

**Nature and circumstances of the offense.** It is hardly surprising that the 3553(a) factors begin with the Court's consideration of the nature and circumstances of the offense. The conduct at issue involves a decade of failure to comply with basic tax filing and reporting requirements and by a sophisticated attorney no less. This was not a one-time, impulsive offense but a pattern of conduct that spanned ten years, year after year. Nor was this a case involving nominal income. The gross income involved in the unfiled returns totaled $5,627,066. The ultimate Guidelines Tax loss agreed to by the parties totaled $3,171,266. In fashioning a sentence, the Court must give great weight to the length of the defendant's tax non-compliance and the substantial sums involved, particularly when contrasted with average ordinary citizens in this state who are asked to accurately report taxes owed each year on income of $95,781. *See* www.incomebyzipcode.com/connecticut (Connecticut median household income).

In an effort to acknowledge the conduct, the defense itself accurately and succinctly describes the gravity of the conduct involved:

> He earned substantial income in each of the years charged. He caused extensions to be filed and then did not file the returns when they came due. He knew the obligations existed and he did not meet it, year after year, all while advising clients on their own legal obligations and holding himself out as a member of the bar.

Def. Mem. at 3. Ultimately, the Court need give great weight to the length of the offense, the dollar amount involved, and that the defendant as an attorney who knew better.

**History and characteristics of the defendant.**

The defendant seeks to mitigate this history of illegal behavior by explaining that he took steps to fix his tax non-compliance before the investigation commenced and has already paid $913,188 toward his restitution obligation of $2,871,676, Def. Mem. 1-2. The record remains somewhat unclear as to what motivated the defendant to take initial steps at compliance. It may have been that the defendant was finally motivated of years of IRS efforts to compel compliance through repeated notices. Or finally the risk assessment was that at some point tax non-compliance would result in criminal prosecution, as it has, if he didn't take steps. Or it may be that he or a family member was unable to travel overseas, with passport application(s) being rejected – rather than concern of the requirement to actually pay taxes -- was the final straw. Def. Mem. at 7 (noting that the impetus for change is attributable to the passport issue). The Government does not minimize that the defendant's taking steps for whatever reason before IRS CID knocked on his door distinguishes this defendant from a number of other tax defendants. But to some degree this must be counterbalanced against the defendant's years of tax avoidance and the extensive monies owed, which is greater than many tax defendants sentenced in the District.

The defendant also mentions the charitable works of not billing certain clients and undertaking certain pro bono services, Def. Mem. at 9-12, as a mitigating factor. The Government would suggest that most white-collar defendants, and certainly many attorneys, make efforts to provide pro bono services and to help members of their community. The steps taken by this defendant are not such as to warrant this characteristic moving the dial in any material way.

The defendant also mentions his family circumstances relating to the care of two children with special needs including his responsibilities to organize one child's athletic needs (and assisting others in providing coaching services) and the loss of financial support caused by incarceration, Def. Mem. at 12-16. The defendant's childcare issues appear now focused on his two younger children, ages 12 and 7. While it is somewhat difficult to read between the lines of the defendant's submission regarding such care, Def. Mem. at 13, it appears that more recently (perhaps the last three years) the defendant's wife has shouldered the primary responsibility for providing parental support, and would presumably remain as a strong source of support if the defendant is incarcerated. Further, the concerns regarding parental coaching, while an understandable benefit to both parent and child alike, do not warrant significant weight in consideration of an appropriate sentence. It is without question that, in any criminal case, the family often bears the collateral consequences of the defendant's choices to engage in illegal conduct.

As for the financial circumstances, it does appear that the defendant has suffered significant financial consequences from this prosecution, including the loss of employment and substantial depletion in available assets in seeking to pay monies owed the IRS (as well as monies he has distributed as part of the ongoing divorce proceedings). To some degree, the defendant's financial situation is of the defendant's own making, as for years he and his family appear to have lived above their means, including purchasing the defendant's current home with monies that were in part owed the IRS and otherwise spending significant monies on ongoing living expenses. To the extent that circumstances may require that the defendant downsize his home and have his wife obtain some employment to make ends meet, that is a natural consequence of any criminal prosecution that results in a period of incarceration. But the

defendant's present financial circumstances and his circumstances going forward might be a factor the Court gives some weight in evaluating the appropriate sentence. The defendant has made significant payment to the IRS and further IRS recovery will be in part dependent on the defendant maintaining some ability to reestablish his professional career.

(2) The need for the sentence to reflect seriousness of offense and just punishment and to promote respect of the law; to afford general and specific deterrence; and to provide the defendant training and care.

**Seriousness of the offense and just punishment.** The Section 3553(a) factors again focus on the offense of conviction by noting a sentence must reflect the seriousness of the offense and just punishment. Here a sentence of 24-30 months incarceration would reasonably give weight to the seriousness of the offense, given the scope and extent of the avoidance over many years. The defendant argues that he has already been punished by loss of employment and potential disciplinary proceedings, Def. Mem. 17. While these consequences are not insignificant, appropriate punishment to instill some level of deterrent must be more than the likely outcome if caught, without further sanction, as the U.S. Treasury is still out millions of monies owed and others might be willing to take the risk.

**Specific and General Deterrence**. The defendant suggests that incarceration is not needed to specifically deter the defendant going forward or to generally deter others. Def. Mem. at 17. The defendant's repeated conduct over time, despite being a zero-point offender and the IRS's repeated efforts by letters or otherwise to force compliance, suggests a legitimate concern that the defendant could make the same mistakes going forward, despite the defendant's protestations to the contrary. That said, given the efforts at compliance before notice of the criminal investigation suggests that the Government has less concern of recidivism here.

The defendant acknowledges that general deterrence is a genuine interest in tax cases, Def. Mem. at 17, but contends that the deterrent message has already been comprehensive and public,

given his loss of employment and the restitution obligation. But those consequences would appear to the general public to be an almost-expected consequence of failing to pay over $3 million due over 10 years of tax non-compliance. It is the extent of the conduct that requires some period of incarceration to send the appropriate deterrent message.

**Training and medical care.** This factor does not appear to be at issue in this matter. And given the very wide range of defendants, BOP is fully equipped to provide necessary medical care, if any such need arises during the relatively short period of confinement.

(3) Consideration of various types of sentences

The Government respectfully submits that, of the available sentencing options, a sentence of incarceration is required. No other sentence sends the same deterrent message, which is why defendants go to such lengths to avoid it. As noted above, the defense suggests that conviction itself is a significant punishment, having loss his job and compelled to pay restitution. Def. Mem. at 17. But being criminally convicted is not sufficient to serve the 3553(a) interests or change the fact that meaningful incarceration is different in kind from other types of punishment for a host of obvious reasons and that difference is an important component of a sentence.

(4) Consideration of the sentence suggested by the Sentencing Guidelines

The Probation Office and the parties agree as to the applicable advisory Guidelines range of 24-30 months. The defendant's memorandum, however, seeks to minimize the Guidelines range by arguing that to reach the range the Probation Office stacked one year counts. *See* Def. Mem. at 21-22. But the defendant entered his guilty pleas knowing exactly how the Guidelines range would be determined, which by the Guidelines guidance included stacking counts. And the plea here to the multiple counts was done to give the Court discretion to give full and appropriate weight to the accurate Guidelines calculation. Here stacking counts made perfect sense where one count – a charge available for the failure to file just one return in one tax year – simply did

not reflect the scope of the illegal conduct, spanning a decade of tax non-compliance and a Tax Loss that suggested a sentence significantly higher than afforded by one count. The Court should give appropriate weight to this 3553(a) factor that reflects the considered judgment of the Sentencing Commission for a 24-30 months sentence based on national priorities and an evaluation of the specific crimes in the context of federal sentencing policy.

(5) Consideration of pertinent Sentencing Commission policy statements

The policy statements to the Guidelines are infrequently mentioned in sentencings as 3553(a) factors, but it is worth noting that the Guidelines repeatedly emphasize the need for reducing nationwide sentencing disparities by introducing the sentencing framework contemplated by the Guidelines. *See generally* U.S.S.G. Section 1A1(3) (The Basic Approach). In other words, the Policy Statements reflect the intention of the Guidelines setting forth sentencing ranges that, in time, would introduce greater uniformity in sentencing. The Policy Statements also give weight to the Commission's decision to "depart[] from the data at different points for various important reasons," including where the data "revealed inconsistencies in treatment, such as punishing economic crime less severely than other apparently equivalent behavior." *Id.* As this factor is expressly included as a 3553(a) factor, the sentencing court need give some weight to the Commission's effort at uniformity on the express terms codified in the advisory Guidelines range of 24-30 months.

(6) The need to avoid unwarranted sentencing disparities.

Here the defendant spends considerable time discussing sentencing statistics to argue for a sentence far below the recommended Guidelines range of 24-30 months incarceration, arguing that the 3553(a) factor contemplates a lower sentence to avoid unwarranted sentencing disparities. Def. Mem. at 18-21. It is interesting that the defendant references the 3553(a) provision to reduce unwarranted sentencing disparities to argue for a below-Guidelines sentence.

Relating to the Guidelines policy considerations noted above, the 3553(a) factors expressly reference the need to avoid unwarranted sentencing disparities *and presumes the Court will give weight to the sentencing structure envisioned by the Guidelines*. Some background of the 3553(a)(6) factor provides useful context.

Although created in 1984, the United States Sentencing Commission had long been in development.[3] In 1975, Senator Edward M. Kennedy first introduced legislation to establish the Commission and sentencing reform.[4] But it was nine years later that Congress officially passed the Sentencing Reform Act of 1984 (SRA), which created the Commission and tasked it with creating the first Sentencing Guidelines.[5] The SRA originated from a series of legislative proposals made in the 1970's.[6] Once such legislative proposal was Senate Bill 181, introduced by Senator Kennedy in 1977.[7] From the legislative consideration of Senate Bill 181 emerged what would become 18 U.S.C. § 3553(a)(6), requiring sentencing judges "to consider the need to avoid unwarranted sentencing disparity."[8] The Senate Judiciary Committee report did not explain the provision's purpose. Instead, it directed the reader to a discussion of the Sentencing Commission's parallel duty to create guidelines that avoid unwarranted disparity, as set forth in proposed 28 U.S.C. § 991(b)(1)(B).[9] There, the report explains the "need to avoid unwarranted sentencing disparity":

> This requirement establishes two factors—the prior records of offenders and the criminal conduct for which they are to be sentenced—as the principal determinants of whether two offenders' cases are so similar that a difference between their sentences should be considered a disparity and therefore avoided unless it is warranted by other factors. The key word in discussing unwarranted sentence disparities is "unwarranted." The

[3] Kate Stith & Steve Y. Koh, *The Politics of Sentencing Reform: The Legislative History of the Federal Sentencing Guidelines,* 28 Wake Forest L. Rev. 223 (1993).
[4] *Id*.
[5] *Id*.
[6] Michael M. O'Hear, *The Duty to Avoid Disparity: Implementing 18 U.S.C. Sec. 3553(a)(6) after* Booker, 37 McGeorge L. Rev. 627, 635 (2006).
[7] *Id*. at 636.
[8] *Id*.; S. REP. No. 95-605, at 892 n.30.
[9] O'Hear, *supra* note 4 at 636.

> Committee does not mean to suggest that sentencing policies and practices should eliminate justifiable differences between the sentences of persons convicted of similar offenses who have similar records.[10]

Senate Bill 181 contained much of the key language that would ultimately be enacted into law as the SRA.[11] But Senate Bill 181 wouldn't be approved for another seven years.[12] The Senate Judiciary Committee produced a new report on this later legislation, which supplied a brief explanation of (a)(6):

> The[] provision[] underline[s] the major premise of the sentencing guidelines-the need to avoid unwarranted sentencing disparity. The subsection requires judges to avoid unwarranted disparity in applying the guidelines and *particularly in deciding when it is desirable to sentence outside the guidelines*.[13]

Therefore, the 1983 Report explicitly tied (a)(6) to a judge's decision whether to deviate from a guidelines sentence.[14] As one academic scholar explains, the legislature "contemplated that the provision would function, at least in part, as a check on inappropriate departures from the Guidelines, specifically, departures motivated by a simple disagreement by a particular judge with the Commission's policy choices."[15]

Indeed, discussions at the time identified the primary source of disparity to be from inconsistencies in judges' policy views:

> These sentence disparities occur in cases in which the nature of the offense, the gravity of public injury, the history of criminal behavior and motivation are substantially comparable. It would appear that in most cases the only differences, differentiating factors are, geographical situs of the offenses and the predisposition of some judges toward particular types of Offenses.[16]

Through the SRA, Congress wanted "each sentence [to] be the result of careful consideration of the particular characteristics of the offense and the offender, rather than being

---

[10] S. REP. No. 95-605, at 1161.
[11] O'Hear, *supra* note 4 at 638.
[12] *Id*.
[13] *Id*.; S. Rep. No. 98-225, at 78 (emphasis added).
[14] O'Hear, *supra* note 4 at 638.
[15] *Id*.
[16] S. 2722, 11

dependent on the identity of the sentencing judge and the nature of his sentencing philosophy."[17] Consequently, "the normative, policy-making role was left to the Commission."[18] In sum, "(a)(6) was *not* intended to function as an open-ended authorization for individual judges to substitute their policy preferences for those embodied in the Guidelines."[19]

In other words, the Court does not further this 3553(a) factor by returning to the sentencing disparities that preexisted the Guidelines with each Judge or District determining a different sentence for similar conduct. If the Court is to give weight to this factor, it would be to return to the uniformity of Guidelines sentences so advocated by the introduction of the Guidelines system. At least under this factor, providing the uniformity of the applicable Guidelines advisory sentence of 24-30 months appropriately serves the purpose of avoiding sentencing disparities, as contemplated by this factor.

(7) The Need for Restitution

The defendant has made meaningful efforts at restitution. While any limited period of incarceration will obviously curtail the defendant's immediate ability to make restitution, that does not undercut the need for a period of incarceration to forward the various policy interests noted above. This factor may tilt in favor of a sentence of less than the 24-30 month range, but it should be considered in context of all the other factors discussed above.

## III. Conditions of Supervised Release

The defense has suggested various limited modifications to proposed conditions of supervised release. Def. Mem. at 21-25. The Government does not oppose the proposed modifications.

[17] O'Hear, *supra* note 4 at 639.
[18] *Id*.
[19] *Id*.

CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court balance the various factors under Section 3553(a) and impose a Guidelines sentence of 24-30 months incarceration or at least a sentence including a meaningful period of incarceration consistent with the reasoning discussed above.

Respectfully submitted,

DAVID X. SULLIVAN
UNITED STATES ATTORNEY

*/s/Christopher W. Schmeisser*

CHRISTOPHER W. SCHMEISSER
ASSISTANT U.S. ATTORNEY
Federal Bar No. ct14806
christopher.schmeisser@usdoj.gov
157 Church Street, 25TH Floor
New Haven, CT 06510
Tel.: (203) 821-3700

CERTIFICATION OF SERVICE

I hereby certify that on September 7, 2026, a copy of the foregoing was filed electronically, by facsimile and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/Christopher W. Schmeisser*

Christopher W. Schmeisser
Assistant U.S. Attorney